Compiler

FILED

2013 FEB 27 PM 5: 00

SUPERIOR COURT
OF GUAM

## IN THE SUPERIOR COURT OF GUAM

KEITH DANIEL VIALL,               )     DOMESTIC CASE NO. DM0806-07
                                  )
                    Plaintiff,    )
                                  )     **FINDINGS OF FACT AND**
          v.                      )     **CONCLUSIONS OF LAW**
                                  )
                                  )
CYNTHIA SUE VIALL,                )
                                  )
                    Defendant.    )
                                  )

## INTRODUCTION

This matter came before the Honorable Arthur R. Barcinas on the 12th day of December, 2011, the 13th day of January, 2012, and the 2nd day of March, 2012, for evidentiary hearings on the issues of the Defendant's entitlement to a portion of the Plaintiff's retirement benefits and the appropriate division of the parties' assets and debts. Attorney Thomas J. Fisher represented the Plaintiff, and Attorney Joaquin C. Arriola, Jr., represented the Defendant. After these hearings, the Court determined that it could not attempt an equal division of the parties' assets and debts, as there was insufficient evidence regarding a key asset, the Defendant's retirement fund(s), which may or may not have constituted separate property, and which was used to purchase the parties' community real property in Guam. The Defendant submitted evidence

regarding her retirement funds on July 23rd and 30th, 2012. The Court now issues the following Findings of Fact and Conclusions of Law on all matters presented.

## FINDINGS OF FACT

After hearing testimony from the parties, and considering all of the evidence filed in the case concerning these issues, the Court finds the following facts were established by a preponderance of the evidence.

1.     The Plaintiff appeared in this action by filing a verified Complaint for Divorce on November 28, 2007.   The Defendant appeared by filing her verified Answer and Counterclaim for Divorce on March 4, 2008.

2.     The Plaintiff and Defendant were married on February 19, 1990, and they continued to be husband and wife from that date until the date of their separation.

3.     The parties separated on December 5, 2007, and remained separated after that date. The marriage lasted approximately seventeen and five sixths (17 and 5/6) years until separation. The Court previously calculated this number as sixteen and five sixths (16 and 5/6) years.  The calculation of sixteen and five sixths (16 and 5/6) years was an error. Seventeen and five sixths (17 and 5/6) years is the correct calculation of the length of the marriage.

4.     Dissolution has been granted on the basis of irreconcilable differences.

5.     There are three minor children of the marriage, T.C.V., presently approximately age fifteen (15), R.V., presently approximately age twelve (12), and S.M.V., presently approximately age eleven (11).  Since December 5, 2007, the Defendant and minor children have been residents of the State of Washington.   Defendant testified that she and the minor children, who are now in or nearing their teen years, have been residing in a small two-bedroom apartment rented in Washington.

6. Both parties testified that it would be in the best interests of the children to be physically placed with the Defendant in the State of Washington, with reasonable visitation awarded to the Plaintiff.

7. The Defendant has maintained different occupations as a wage earner at various jobs before the marriage, during the marriage and since separation, including approximately ten years of employment at the Department of Defense. The duration of this approximate nine year employment span occurred during the marriage of the parties, from October 28, 1991 to August 16, 1998, and from October 10, 2000 to April 23, 2002. These two separate terms of employment resulted in the existence of two retirement funds (hereinafter the "TSP IRA" and the "TSP IRA 2011"). She currently earns $8.25 per hour as a teaching assistant, although her hours vary each month. Evidence was presented that her hours vary between twelve hours per month and sixty-three hours per month, this would result in a maximum monthly income of $519.75 per month before taxes, and a median average income of approximately $309.37 per month before taxes; however, the Defendant testified that she earns an average of $1,000.00 per month, after taxes.

8. The house and lot at 110 Chalan Tasi, Pago Bay, Guam, was purchased by the parties in 2006, during the parties' marriage at a purchase price of $375,000.00. The current assessed value of the lot and house together is $340,000.00.

9. The Defendant held an initial 401(k) plan (the "TSP IRA") earned during her initial employment with the Department of Defense. In 2006, she withdrew $55,831.76 from this plan, the entirety of which was used as the down payment purchase money and closing costs for the purchase of the house and real property at 110 Chalan Tasi, Pago Bay, Guam, minus an amount which was forfeited for early withdrawal. The Defendant no longer holds the plan. However, the Defendant still holds another retirement plan (the "TSP IRA 2011") from

her second span of employment with the Department of Defense, and the amount of $4318.04 remains in this plan.

10. The Plaintiff began active duty with the U.S. Navy in December of 1988. Beginning at that time, the Plaintiff began earning credit toward retirement benefits. The Plaintiff accrued twenty one and one third (21 and 1/3) years of eligibility towards retirement, thus entitling him to benefits. He was married to the Defendant for seventeen and five sixths (17 and 5/6) years of these contributing years.

11. Since 2011, the Plaintiff has been retired, and has been receiving benefits, but testified that he has also been employed with the Naval Undersea Warfare Center of the Department of Defense, earning $5,012.00 gross pay per month. The Plaintiff testified he receives $2,254.00 gross per month in retirement benefits. He also currently receives rental income of $3,000.00 per month from the rental of 110 Chalan Tasi, Pago Bay, Guam. In total, he receives $10,266.00 per month in income. In addition to his income, the Plaintiff currently receives approximately $2,000.00 per month in overseas housing allowance as additional compensation for his employment in Guam, raising the total of Plaintiff's current earnings and compensation to $12,266.00 per month.

12. The parties provided evidence of two marital settlement agreements, executed by both parties after separation, consisting of the Settlement Agreement for Separation, Division of Property, Child Custody and Support of December 21, 2007, and the Divorce Settlement Agreement of September 3, 2010. The Divorce Settlement Agreement of September 3, 2010, was drafted by the Defendant herself, without the assistance of an attorney, despite the fact that she was represented by counsel at the time.

13. The parties provided evidence as to the existence of the following property, which is disputed as divisible under the Divorce Settlement Agreement of September 3, 2010:

      a)     Community interest in Plaintiff's retirement;

b)      1995 Four Winns boat and trailer;

c)      1969 Camaro vehicle;

d)      Kawasaki 50cc vehicle;

e)      2003 Kawasaki 65cc vehicle;

f)      2005 Kawasaki 65cc vehicle;

g)      Kawasaki 65cc vehicle;

h)      Yamaha 250cc vehicle;

i)      2004 Ford F150 vechicle;

j)      2007 Harley Davidson vehicle;

k)      1998 Mustang Cobra vehicle;

l)      2002 Dodge Neon vehicle;

m)      Utility trailer;

n)      Household furnishings and appliances.

14.     The parties provided no evidence as to the existence of any undisputed community property. All property alleged to be community property is disputed as divisible in this case, pursuant to the Settlement Agreement for Separation, Division of Property, Child Custody and Support of December 21, 2007, and the Divorce Settlement Agreement of September 3, 2010.

15.     The parties also provided evidence of the following property, alleged to be the separate property of the Plaintiff:

a)      1970 Chevy Pickup

b)      1986 Mitsubishi Montero

c)      Starcraft Boat, Hull No. 1044075

16.     The parties provided evidence as to the existence of the following community debts which are expressly listed in the Settlement Agreement for Separation, Division of

Property, Child Custody and Support of December 21, 2007, and the Divorce Settlement Agreement of September 3, 2010:

      a)     taxes due to the IRS of $9600.00;

      b)     Navy Fed Visa card, balance of $19,700.00;

      c)     USAA Master card, balance of $13,116.00;

      d)     loan relating to 2004 Ford F150 vehicle, balance of $21,100.00;

      e)     loan relating to 2007 Harley Davidson vehicle, balance of $22,145.00;

      f)     loan relating to 1998 Mustang Cobra vehicle, balance of $8,225.00;

      g)     loan relating to 2002 Dodge Neon vehicle, balance of $2,147.00; and

      h)     loan relating to 2005 Kawasaki 65cc vehicle, balance of $622.00.

17. The parties provided evidence as to the existence of the following community property which is not expressly listed in the Settlement Agreement for Separation, Division of Property, Child Custody and Support of December 21, 2007, or the Divorce Settlement Agreement of September 3, 2010:

      a)     Community interest in the house and real property at 110 Chalan Tasi, Pago Bay, Guam, purchased by the parties during the marriage;

18. The parties provided evidence as to the existence of the following community debt which is not expressly listed in the Settlement Agreement for Separation, Division of Property, Child Custody and Support of December 21, 2007, or the Divorce Settlement Agreement of September 3, 2010:

      a)     A mortgage loan relating to the house and lot at 110 Chalan Tasi, Pago Bay, Guam.

19. The Plaintiff testified that the amount owing on the loan relating to the home built on 110 Chalan Tasi, Pago Bay, Guam, is estimated to be $314,000.00, as of January of

2012, however, no documentation of this loan was provided to the Court in order for the Court to determine the amount owing on this loan at the time of separation.

20.    The Plaintiff testified as to the values of the following property, which is claimed as the Plaintiff's separate property under the Divorce Settlement Agreement of September 3, 2010:

a)    Plaintiff's retirement income of $2,254.00 per month;

b)    1995 Four Winns boat and trailer valued at $10,000.00;

c)    1969 Camaro vehicle valued at $15,000.00;

d)    2 Kawasaki 50cc vehicles sold for $200.00 each;

e)    2003 Kawasaki 65cc vehicle sold for $1,000.00;

f)    2005 Kawasaki 65cc vehicle sold for $1,000.00;

g)    Yamaha 250cc vehicle sold for $1,000.00;

h)    2004 Ford F150 vehicle valued at $10,000.00;

i)    2007 Harley Davidson vehicle valued at $10,000.00;

j)    1998 Mustang Cobra vehicle valued at $0 due to the sale of the vehicle for the amount of the loan owed on the vehicle pursuant to the Settlement Agreement for Separation, Division of Property, Child Custody and Support of December 21, 2007;

k)    2002 Dodge Neon vehicle valued at $0 due to sale and payment of one half of the proceeds to the Defendant pursuant to the Settlement Agreement for Separation, Division of Property, Child Custody and Support of December 21, 2007;

l)    Utility trailer valued at $1,000.00;

21.    The Plaintiff testified as to the values of the following property, which is also claimed as the Plaintiff's separate property:

a)    1970 Chevy Pickup valued at $500.00

b)    1986 Mitsubishi Montero valued at $1,100.00

c)    Starcraft Boat, Hull No. 1044075 valued at $1,000.00

22.    The total value of the personal property claimed as the Plaintiff's separate property under the Settlement Agreement of September 3, 2010, as testified by Plaintiff, excluding the Plaintiff's retirement income, is $49,400.00.

23.    The total value of all personal property claimed as the Plaintiff's separate property, as testified by Plaintiff, excluding the Plaintiff's retirement income, is $52,000.00.

24.    The Plaintiff has previously been ordered and is still currently ordered to pay child support to the Defendant in the amount of $1,582.00 per month.

25.    All findings of fact may be interpreted as conclusions of law and *vice versa*.

## CONCLUSIONS OF LAW

The Court previously found jurisdiction and granted the parties a divorce under 19 GCA §§ 8203(g) and 8319 on the grounds of irreconcilable differences.

I.)    <u>Division of the Assets and Debts of the Parties</u>

In this matter, Defendant is seeking a community division of community assets including the former marital home and retirement benefits. However, there is evidence of two marital settlement agreements duly executed by the Defendant which may or may not affect this division.

"A husband and wife 'may enter into any engagement or transaction with the other' respecting property, subject 'to the general rules which control the actions of persons occupying confidential relations with each other'." Blas v. Cruz, 2009 Guam 12 ¶ 21 (quoting 19 GCA § 6111(a) (2005)). "Although a husband and wife generally cannot contract to 'alter their legal

relations,'" they may consensually alter their relations with respect to property by contract. Id. (quoting 19 GCA § 6111(b)).

"A contract is an agreement to do or not to do a certain thing." 18 GCA § 85101 (2012). The elements of a contract on Guam are: 1) parties capable of contracting; 2) consent of the parties; 3) a lawful object; and 4) sufficient consideration. 18 GCA § 85102 (2012); *see also* Blas v. Cruz, 2009 Guam 12 ¶18. In order to form a valid contract, it is also essential that the parties be identifiable. 18 GCA § 85203 (2012). Additionally, all contracts between husband and wife of which the subject matter is their separate or community property must be in writing and executed and acknowledged or approved in like manner as a grant of land is required to be executed and acknowledged or approved. 19 GCA § 6112 (a).

The Supreme Court of Guam recently held that a trial court generally does not have jurisdiction to modify a settlement agreement reached by the parties and incorporated into a divorce decree when the settlement agreement concerns the division of property. Lujan v. Lujan, 2012 Guam 7 ¶ 23. However, if the agreement is not integrated, "the court retains the authority to modify the decree as to spousal support." Id. Under 19 GCA § 8405:

> When a dissolution of marriage is granted, the tribunal shall . . .make such suitable allowance to the other spouse for that person's support, during that person's life, or for a shorter period, as the Court may deem just, having regard to the circumstances of the parties respectively; and the Court may from time to time, modify its order in these respects.

19 GCA § 8405 (2012).

The Court finds that the community property was divided by settlement agreement. Both the Settlement Agreement of December 21, 2007, and the Settlement Agreement of September 3, 2010, are signed by the parties, and each is notarized.

In this case, the agreements at issue are valid.  On December 21, 2007, approximately two weeks after the parties separated, and one month after the Plaintiff filed this action for divorce, the Plaintiff and Defendant executed a settlement agreement granting a division of certain debts and assets, child support, and spousal support.  On September 3, 2010, the Plaintiff and Defendant executed another settlement agreement, this time granting the Plaintiff ownership of many vehicles and the Defendant's release of "all rights to all assets and community property to Keith D. Viall, making Keith D. Viall sole owner with the exception of the 1987 Acura Legend." Defendant's Exhibit J. In both settlement agreements, the parties are identified and have executed consent to the settlement agreements in their own names.  Thus, the instruments themselves purport to bind the Defendant.  The Defendant is a named party to the agreements, and the express terms of the agreements indicate that she executed the agreement on her own behalf.  Under 18 GCA § 20308, an intent to bind Defendant can be found within the documents.  On the face of the documents, the parties were capable of contracting, and the agreements contained a lawful object. At the evidentiary hearings, the Plaintiff testified to the purpose of the December 21, 2007 agreement, i.e., that its intent was to settle some of the division of some of the parties' property, but that it was not intended to provide a dissolution of the marriage, and that the agreement was not a final settlement of all of the parties' debts, assets, or issues relating to the divorce. Although the parties disagree as to the ultimate purpose of the September 3, 2010 agreement with regards to all remaining community property, they both testified that a purpose of the September 3, 2010 agreement was for the Plaintiff to obtain title and possession to the many vehicles owned by the parties in exchange for the Defendant receiving $10,000.00 in cash.  Therefore, there is sufficient consideration for both settlement agreements. Most importantly, the agreements are duly executed by the parties

and acknowledged through notarization, and therefore, the agreements meet all of the requirements for a written agreement or contract regarding the disposition of community property during the marriage under Guam law. Blas v. Cruz, 2009 Guam 12 ¶¶ 18–20.

The December 21, 2007 agreement sets forth that the Plaintiff agreed to assume the following debts: $9600.00 owed to the IRS; $19,700.00 owed to Navy Fed Visa; $13. 116.00 owed to USAA Master Card; $21,100.00 owed on a 2004 Ford F150; $22,145.00 owed on a 2007 Harley Davidson; $8,225.00 owed on a 1998 Mustang Cobra; $2,147.00 owed on a 2002 Dodge Neon; and $622.00 owed on a 2005 Kawasaki 65cc. However, the Plaintiff testified that he sold the 1998 Mustang Cobra, the 2002 Dodge Neon, and the 2005 Kawasaki 65cc, all for at least the amount of debt owed on those vehicles. Accordingly, under the agreement, the Plaintiff assumes the debts to the IRS, Navy Fed Visa, USAA Master Card, 2004 Ford F150; and the 2007 Harley Davidson.

The December 21, 2007 agreement next sets forth that "[u]pon the sale of the house, any equity shall first be applied to pay off the following debt assumed by husband . . . ." Defendant's Exhibit J. The debt to be paid off through sale of "the house" consists of the IRS debt, the Navy Fed Visa debt, and the USAA Master Card debt. The agreement further provides that the proceeds shall next be used to reimburse the Plaintiff for any improvements made to sell the house, and that the remaining proceeds shall be split evenly by the parties. The agreement does not specify a particular named house as the subject of the agreement, but as the evidence has proven that the parties only own one house, it is apparent that "the house" refers to the house and real property situated at 110 Chalan Tasi, Pago Bay, Guam. The agreement does not require the Plaintiff to sell the house, but if he does sell the house, he shall pay off the debts and improvements to the house, and thereafter split the proceeds evenly with the Defendant.

The December 21, 2007 agreement also sets an amount of child support of $342.00 per month, per minor child in the Defendant's care and custody, equaling a total sum of $1,026.00 per month for the three minor children.  This stipulated amount is well below the Guam Child Support Guidelines, and may be disregarded by the Court because "parents cannot by agreement limit or divest a court of its discretion in settling child support," and there is a lack of factual basis to allow the Court to deviate from the guidelines in this case. Guerrero v. Moylan, 2002 Guam 18 ¶¶ 24, 27–29; *see also* Lanser v. Lanser, 2003 Guam 14 ¶ 24; and 19 GAR § 1202(b)(3).

Finally, the December 21, 2007 agreement sets an amount of alimony/spousal support in the amount of $500.00, "plus any monies [Defendant] may be entitled, [$1,000 for Vancouver, WA area,] to receive as an active duty soldier as his Basic Allowance for Housing (BAH) . . . ." Defendant's Exhibit J.  Plaintiff and Defendant testified that the Plaintiff was not and is not entitled to any money for BAH, thus the amount of alimony was set by the agreement at $500.00 per month; however, Plaintiff and Defendant also testified that the Plaintiff has not been paying this amount to the Defendant.  The December 21, 2007 agreement addresses no other issues.

The September 3, 2010 agreement sets forth that the Defendant acknowledged the receipt of $10,000.00, and the Plaintiff newly assumes "all debts" of the parties, including the Navy Federal Credit Union Visa, the USAA Master Card, and a non-secured loan from the Navy Federal Credit Union "for this transaction." It is not clear what "this transaction" means, nor have the parties provided clarification for the Court. The agreement further provides that any and all debts secured after signing the 2007 separation agreement will be the separate debt of the parties.  Finally, the Defendant "agrees to and releases all right to all assets and

community property to Keith D. Viall, making Keith D. Viall sole owner with the exception of the 1987 Acura Legend." Defendant's Ex. J. No particular property to which the Defendant "releases all right" is listed. Instead, on its face, the agreement plainly states that the Defendant waives her rights to "all assets and community property" with the exception of the 1987 Acura Legend.

Defendant argues that the Court should find the settlement agreement of September 3, 2010, invalid because she did not understand all of the legal and financial ramifications of executing that settlement agreement at the time she drafted and signed it.

The settlement agreement of September 3, 2010, was not only executed by the Defendant, but was created and drafted by the Defendant. Both the Plaintiff and the Defendant testified that the settlement agreement of September 3, 2010 was drafted by the Defendant, not the Plaintiff, so that the Defendant could obtain $10,000.00 in cash from the Plaintiff. Relief from a marital contract, willingly entered and executed, is not governed by ordinary community property laws. Instead, contract principles apply to the interpretation and determination of the validity of marital agreements regarding community property. Blas v. Cruz, 2009 Guam 12 ¶¶ 11 and 18–20; see also Leon Guerrero v. Moylan, 2000 Guam 28 ¶¶ 8 9; and Camacho v. Camacho, 1997 Guam 5 ¶¶ 30 35. Accordingly, the Court must look to the provisions of the Guam Code regarding contracts and applicable contract remedies.

The Settlement Agreement of September 3, 2010 is valid on its face, and there is no argument that it does not meet all of the requirements of a valid contract. Nevertheless, Defendant, in fact, seeks to have the settlement agreement of September 3, 2010, invalidated or rescinded. "A contract is extinguished by its rescission." 18 GCA § 89201 (2012). Because the parties entered into a facially valid agreement for the exchange of property and cash, the

Defendant must show that she is entitled to rescind the agreement on the basis of a justifying reason. Under Guam law, a written contract may only be rescinded "on the application of a party aggrieved: (1) In any of the cases mentioned in 18 GCA § 89203; or, (2) Where the contract is unlawful, for causes not apparent upon its face, and the parties were not equally in fault; or (3) When the public interest will be prejudiced by permitting it to stand." 20 GCA § 3240 (2012).

Under Chapter 89 of Title 18, as referenced by 20 GCA § 3240, a court may grant rescission of a written agreement upon a showing of any one of the following reasons:

> 1. If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party; 2. If, through the fault of the party as to whom he rescinds, the consideration of his obligation fails, in whole or in part; 3. If such consideration becomes entirely void from any cause; 4. If such consideration, before it is rendered to him, fails in a material respect, from any cause; or 5. By consent of all other parties.

18 GCA § 89202 (2012).

First, the Defendant's request for rescission is untimely. Under 18 GCA § 89204:

> Rescission, when not effected by consent, can be accomplished only by the use, on the part of the party rescinding, of *reasonable diligence to comply with the following rules: 1. He must rescind promptly, upon discovering the facts which entitle him to rescind*, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind; and, 2. He must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so.

18 GCA § 89204 (2012) (emphasis added).

Defendant did not contest or request the invalidation of the Settlement Agreement of September 3, 2010 until after the Plaintiff filed a motion for summary judgment on the basis of the agreement in October of 2011. The Plaintiff has not consented to the rescission of the

September 3, 2010 agreement, and the Defendant fails to address whether her current request for the Court to invalidate the Settlement Agreement of September 3, 2010, is timely based on all of the circumstances—i.e., that she recently discovered the basis for this request for rescission, or there is an explanation as to why she waited more than one year after signing the September 3, 2010 settlement agreement to contest the agreement or request its rescission. Defendant provides no indication of the time she discovered the facts which led her to believe that she was entitled to rescission. This issue is unaddressed in the Defendant's testimony, and the Court finds that one year is not reasonably timely in the absence of some explanation for the delay.

However, even if the Court reviews her reasons for seeking to challenge the settlement agreement of September 3, 2010, she has failed to state a valid basis for rescission under the laws of Guam. "'Experienced family judges and lawyers know that the best resolution of marital disputes is that reached by agreement of the parties themselves.'" Blas v. Cruz, 2009 Guam 12 ¶ 21 (quoting In re Marriage of Cream, 16 Cal. Rptr. 2d 575,582 (Ct. App. 1993)). 18 GCA § 87105, concerning the interpretation of written contracts states, "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . ." 18 GCA § 87105 (2012). Further, pursuant to 18 GCA § 86107, "[t]he execution of a contract in writing . . . supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." 18 GCA § 86107 (2012). Thus, where the parties express their agreement in writing, any other agreements or discussions made contemporaneously or prior to writing are generally irrelevant in determining the intent of the parties. *See also* 6 GCA § 2511 (2012).

Defendant claims that the Plaintiff took advantage of her ignorance of the facts of the parties' finances and the state of the law. However, her testimony introduces no evidence or allegation that she was threatened or prevented from independently seeking this information. She entered into and *drafted* the September 3, 2010 agreement on the basis of the knowledge in her possession at the time of the agreement, without seeking the advice of counsel, even though she was represented. Her request for relief is untimely and unsupported by facts which would entitle her to rescission.

The Defendant argues only that she is entitled to relief from the settlement agreement because she misunderstood the consequences of the agreement. Defendant at no time has claimed fraud or misrepresentation as the cause of her drafting and execution of the settlement agreement. Instead, she testified that she drafted and signed the settlement agreement because she knew that signing it would benefit her, by allowing her to obtain $10,000.00 in funds, which she needed at the time. She merely references her ignorance about the full financial ramifications of drafting and signing the settlement agreement. She, in essence, argues that she made a mistake in drafting and signing this agreement, because: 1) she did not intend to sign away all right to the remaining community property; and 2) she did not fully understand the language she used in the agreement, nor its effects on her legal rights to community property. On these bases, she argues that she should be granted rescission of the settlement agreement now, so that she may claim half of her interest in the community property which remained unsettled by the December 21, 2007 agreement, i.e., Plaintiff's retirement benefits.

Because the Defendant does not argue the failure of consideration or consent to rescission, the only remaining bases for rescission under Guam law consist of duress, menace,

undue influence, or fraud by the Plaintiff in obtaining the settlement agreement under 18 GCA § 89202(1).

18 GCA § 85305 defines duress, stating:

Duress consists in: 1. Unlawful confinement of the person of the party, or of the husband or wife of such party, or of an ancestor, descendant, or adopted child of such party, husband or wife; 2. Unlawful detention of the property of any such person; or 3. Confinement of such person, lawful in form, but fraudulently obtained or fraudulently made, unjustly harassing or oppressive.

18 GCA § 85305 (2012).

Defendant's testimony in no way supports of a claim of duress. There are no allegations that the Plaintiff imprisoned the Defendant, her relatives or her property, or ever threatened to do so. In fact, the Plaintiff signed the settlement agreement at the Defendant's own request, as testified by both parties. Defendant's complaints do not constitute the statutory duress required to rescind a contract.

18 GCA § 85306 defines menace, stating, "[m]enace consists in a threat: 1. Of such duress as is specified in subdivisions 1 and 3 of the last section; 2. Of unlawful and violent injury to the person or property of any such person as is specified in the last section; or 3. Of injury to the character of any such person." 18 GCA § 85306 (2012). Again, there are no allegations of threats of injury to person or property, and Defendant's complaints do not constitute the menace required to rescind a contract.

18 GCA § 85311 defines undue influence:

Undue influence consists: 1. In the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him; 2. In taking an unfair advantage of another's weakness of mind; or, 3. In taking a grossly oppressive and unfair advantage of another's necessities or distress.

18 GCA § 85311 (2012).

The Defendant does not allege any undue influence either. Defendant merely argues that the she did not understand that she was giving up all claim to the remaining marital asset(s). The express provisions of the settlement agreement, which were utilized by the Defendant, clearly and unambiguously set forth the purpose of the agreement, which was to "agree[ ] to and release[ ] all rights to all assets and community property to Keith D. Viall, making Keith D. Viall sole owner with the exception of the 1987 Acura Legend." Defendant's Exhibit J.

Moreover, any assertion of undue influence is belied by the Defendant's own testimony that the settlement agreement was drafted by the Defendant and executed by the Plaintiff at the Defendant's behest. Accordingly, Defendant is precluded from claiming undue influence in executing the settlement agreement on the basis that she did not have sufficient legal information. Defendant's failure to take steps to inform herself of her rights and her financial situation cannot constitute undue influence, especially when she was represented by an attorney at the time she drafted the agreement, and simply failed to consult with her attorney with regard to the agreement.

Finally, the Court can find no reason that these particular difficulties or circumstances constitute fraud, rather than mistake on the part of the Defendant.

At no point in the Defendant's testimony does she outline any specific "misrepresentation" or "fraud" perpetrated in this case. Under Guam law, the elements of fraud and misrepresentation are: "(1) a misrepresentation; (2) knowledge of falsity (or scienter); (3) intent to defraud to induce reliance; (4) justifiable reliance; and (5) resulting damages." Transpacific Export Co. v. Oka Towers Corp., 2000 Guam 3 ¶ 23.

Prevailing Ninth Circuit case law, as adopted by the District Court of Guam, requires that averments of fraud must be accompanied by "the who, what, when where, and how" of the

charged misconduct. Arnold v. Melwani, Civ. No. 09–00030, 2011 WL 1317066 * 3 (D. Ct. Guam, March 31, 2011)(quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)); *see also* Taitano v. Calvo Finance Corp., 2008 Guam 12 ¶ 14. "A plaintiff must set forth what is false or misleading about a statement, and why it is false." Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.), 42 F.3d 1541, 1548 (9th Cir. 1994). It is not enough to simply state that a fraud occurred, or that a fraud is suspected, but a party requesting rescission of a contract on this basis must provide the particular facts concerning the elements of the fraud.

The Defendant's testimony does not specifically set forth any misrepresentation or false statement made by the Plaintiff to fraudulently acquire her signature on the settlement agreement. At worst, Defendant complains that she was ignorant or that no one explained her legal rights to her. These omissions cannot be characterized as factual misrepresentations. Whether the Defendant needed legal advice is a decision that could only be made by the Defendant based upon all the circumstances. Whether or not Defendant's legal rights were adequately protected by the settlement agreement is the type of advice that could have been given to her by an attorney. Defendant's decision to rely upon her own draftsmanship, and her understanding of the law or legal terms, even though she is not an attorney, can only be characterized as a poor choice made by the Defendant.

As discussed in this opinion, there is no actual duress, menace, undue influence or fraud alleged, and thus, the real basis for Defendant's motion is her own mistake. Now, Defendant regrets the result of her uninformed judgment, and seeks relief on the basis of this mistake. However, the Court cannot protect parties from the consequences of their own flawed decisions.

It is well-established that the language of a contract is construed against its drafter, and is construed in favor of the non-drafting party. *See* Quan Xing He v. Government of Guam,

2009 Guam 20 ¶ 49, n. 10 (quoting Restatement (Second) of Contracts § 206 (1981)) ("In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds."); *cf.*, Lujan, 2012 Guam 7 ¶ 10 (marital settlement agreement contained express provision that neither party would be considered the drafter). It is undisputed that the Defendant drafted the September 3, 2010 agreement herself, and made a deliberate choice to draft the agreement without the aid of her representative, and that she chose to disavow some interest in marital property through a written agreement. The Defendant has alleged no actual fraud or mutual mistake, as would be required to relieve her from the terms of the settlement agreement. *See* id., at ¶ 22 (citing Leon Guerrero v. Moylan, 2000 Guam 28 ¶ 9) ("Where a party to a divorce action, represented by counsel, voluntarily executes a property settlement agreement which is approved by the court and incorporated into a divorce decree, such a decree may not be vacated or modified as to such property provisions in the absence of fraud or gross inequity.").

The Defendant understood that she was disavowing an interest in at least some items of community property. "Parties to a divorce are free to bargain away their [ ] property in settlement agreements." Leon Guerrero v. Moylan, 2000 Guam 28 ¶ 15. Defendant claims she merely failed to understand the scope and comprehensiveness of the language she utilized in relinquishing "all rights to all assets and community property to Keith D. Viall, making Keith D. Viall sole owner . . . ." Defendant's Exhibit J. Plaintiff testified that he understood that the Defendant was agreeing to give up all of her rights in the remaining undivided community property, as clearly stated in the agreement. Defendant testified that she understood that she was only agreeing to give up all of her rights to the parties' many community vehicles in

exchange for $10,000.00 in cash. This is not a mutual mistake. If any mistake was made in understanding the terms of the agreement, it was made by the Defendant alone, and therefore, constitutes a unilateral mistake, which is not sufficient to merit rescission of a valid settlement agreement. Because the Defendant entered into an agreement and simply misapprehended the effect and consequences of her action, the Court finds that relief in the form of rescission is not available.

Although the Court is not without sympathy for the Defendant, the Court must conclude that the unilateral mistake of the Defendant regarding her understanding of the agreement she drafted and signed cannot merit relief. Accordingly, the Defendant retains no interest in the Plaintiff's retirement funds, as validly agreed by the parties. The Court takes this opportunity to caution parties against the pitfalls of performing their own legal work without ever having engaged in the specialized study of law, particularly when they have retained counsel. Although every person has the right to represent themselves, oftentimes, as stated in the old adage, "He who represents himself has a fool for a client." (Based upon Abraham Lincoln's recognition that if one is "resolutely determined to make a lawyer of [one]self, the thing is more than half done already." Letter from Abraham Lincoln to Isham Reavis (Nov. 5, 1855)(cited in Bench & Bar of Minnesota, Vol. 66, No.2, Lincoln's Minnesota Legacy (February 2009)).

However, the Court will examine the remaining issues to determine division under the approximately equal standard. Sinlao v. Sinlao, 2005 Guam 24 ¶ 23.

II.)     Plaintiff's Retirement Fund

Defendant requested that the Court order that the Plaintiff's retirement benefits be divided between the parties as a community asset. However, the Defendant disclaimed her right to receive any portion of this community asset in the Settlement Agreement of September 3,

2010. Nevertheless, the Court finds it instructive to determine the precise amount of community property the Defendant has given up through her own untrained legal work. The right to retirement is a property interest that allows one to "draw from a stream of income that begins to flow, and is defined, on retirement." Lehman v. Lehman, 18 Cal.4th 169, 183 (Sup. Ct. Cal. 1998). The Superior Court of Guam has jurisdiction to divide community property, including retirement benefits, upon the dissolution of marriage. Hart v. Hart, 2008 Guam 11, ¶¶ 17, 26; 7 GCA §§ 3105 and 4101 (2012); and 19 GCA § 8411. A party is entitled to begin receiving these divided retirement benefits when the benefits reach full maturation, i.e., when they are disbursed, and as enhanced by additional years of service and promotion. Hart, 2008 Guam 11, ¶¶35–37; and Lehman v. Lehman, 18 Cal.4th 169, 183 (Sup. Ct. Cal. 1998).

In the present case, the Plaintiff retired in 2011, and has been receiving disbursements of his retirement benefits since that time. 10 U.S.C. § 1408(d)(2), which particularly specifies that the length of the benefits earned must correspond with the length of the marriage, states, "[i]f the spouse or former spouse to whom payments are to be made under this section was not married to the member for a period of 10 years or more during which the member performed at least 10 years of service creditable in determining the member's eligibility for retired pay, payments may not be made . . . ." 10 U.S.C. § 1408(d)(2). Guam has chosen to be a community property jurisdiction. Earnings and other compensation received by spouses are community property. 19 GCA §§ 6101(c) and (g).

Accordingly, if the Defendant had not drafted and signed an agreement waiving any interest in all remaining community property, a percentage of the Plaintiff's retirement funds would have been divisible community property, as the Court finds that the marriage lasted more

than ten (10) years, and more than ten (10) years of retirement benefits were earned during the marriage.

Generally, Guam courts use the apportionment method of dividing retirement benefits, when the benefits contain both separate and community interests. Hart, 2008 Guam 11 ¶ 38. However, the Superior Court of Guam has the discretion to choose which apportionment method is appropriate for the situation, so long as the outcome is not manifestly unjust, and the Court arrives "at a result that is 'reasonable and fairly representative of the relative contributions of the community and separate estates.'" Id., at ¶ 41(quoting In re Marriage of Poppe, 97 Cal. App. 3d. 1, 11 (Cal. Ct. App. 1979))(internal citation omitted).

In this case, the benefits have reached maturation, as the Plaintiff has already retired and is receiving his retirement benefits. In such cases where the retirement benefits have vested and are disbursed, and the marriage is thereafter subject to dissolution, a party is entitled to immediate division of the retirement benefits. Hart, 2008 Guam 11 ¶¶ 35–37.

The Supreme Court of Guam has affirmed that a proper method for determining the division of retirement benefits is an apportionment equation placing the length of the marriage during which the party earned retirement benefits in the numerator, the total length of the party's retirement service in the denominator, and the party's total final retirement pay as the multiplier. Hart, 2008 Guam 11, ¶¶ 19, 28–31 (citing Sablan v. Sablan, 1979 WL 15117 at *12 (D. Guam App. Div. Feb. 15, 1979); and In re Marriage of Fithian, 517 P.2d 449 (Cal.1974)).

Using this formula, the Court would have calculated these benefits as of the date of separation, December 5, 2007. As the Plaintiff is now receiving his vested retirement benefit, the Court finds that the Defendant's monthly share of the Plaintiff's retirement benefits would have been half of seventeen years and 5/6 months, or 214 months, divided by twenty one years

and four months, or 256 months, multiplied by the Plaintiff's monthly benefits, restated as $(214/256)(\$2254.00)/ 2 = (.836)(\$2254.00)/2 = .418$, or $41.8\% \times \$2254.00 = \$942.17$ per month, if no waiver existed under the Settlement Agreement of September 3, 2010.

### III.) Spousal Support

Although the parties have executed agreements as to the particular division of community assets and debt, under 19 GCA §8411(b) and Sinlao v. Sinlao, 2005 Guam 24, the Court is required to strive for fairness and equity between the parties whenever possible. In the Sinlao case the Supreme Court of Guam specifically rejected the "mathematically equal" standard used by the California courts. Id., at ¶ 23. Instead, the court determined that under 19 GCA §8411, the trial courts should strive for approximate mathematically equal awards when possible, but should be afforded broad discretion to determine an equitable apportionment of interests with due regard for the particular facts of each case and the interests of justice. Id.

In this case, the Court was presented with evidence of the existence and division of community property and the disavowal of interest in certain community property. However, this agreement of the parties is accompanied by the Court's obligation to attempt to equalize the fairness of the division of that property, by taking into account other factors such as spousal support, the distribution of income between the parties, the support necessary for the children of the marriage, and the interests of justice. Id.

Further, as specifically found by the Supreme Court of Guam in Lujan, 2012 Guam 7, the Court retains its ability to modify spousal support under 19 GCA § 8405 when the agreement providing therefor is a hybrid agreement, not an integrated agreement. Id., at ¶¶ 38–45.

An agreement is "integrated" if the parties have agreed that the provisions for the division of property and the provisions for support constitute reciprocal consideration. Id. "The support provisions are then necessarily part and parcel of a division of property." Id. Factors deemed conclusive evidence that the parties intended an integrated agreement include: (1) a statement of the purpose of the parties to reach a final settlement of their rights and duties with respect to both property and support; (2) a statement that the property and support provisions are each consideration for the other; and (3) an express waiver of all rights arising out of the marital relationship except those expressly set out in the agreement. Id. (citations omitted).

Id., at ¶ 41 (citing to Plumer v. Plumer, 313 P.2d 549, 551 (Cal.1957) (en banc)).

The Supreme Court of Guam, found that in the Plumer case, "but for an express provision for modification in the parties' agreement in that case, the agreement clearly implied that the parties intended it to be integrated because the parties set forth as their purpose 'to effect final and complete settlement of their . . . rights . . . with reference to their marital status and to each other,' and they released each other from all claims arising out of the marital relationship except as provided in the agreement.'" Id., at ¶ 42 (quoting Plumer, 313 P.2d at 553). Accordingly, if an agreement is integrated, containing a clear intent to effect a final and complete settlement of all of the parties' rights, the Court does not retain jurisdiction to modify spousal support; however, if the agreement is partial, or hybrid, the Court retains jurisdiction to modify spousal support amounts.

In this case it is clear that the December 21, 2007 agreement was not intended to constitute a final resolution of the all of the property at issue. It meets none of the three criteria listed in the Lujan case in order to constitute an "integrated" agreement. There is no statement that the purpose of the agreement is to reach a final settlement; there is no statement that the spousal support provision and the property provisions are in consideration for each other; and there is no express waiver of all rights arising out of the marital relation.

Further, the December 21, 2007 agreement was not incorporated into any decree of divorce; and particularly, it was not incorporated into any decree because there was remaining property over which the parties did not agree, and which was to be adjudicated by the Court at trial. The agreement contains no provisions for the dissolution of the marriage of the parties. The fact that the December 21, 2007 agreement was not a final integrated agreement is most fully and frankly attested by the parties' execution of a second agreement on September 3, 2010, disposing of additional community property which was not addressed in the December 21, 2007 agreement. The December 21, 2007 agreement could not have been a final and complete resolution of the parties' rights with respect to the community property and division, as it did not dispose of all the community property and interests, and it was never incorporated into a decree due to the parties' continued litigation over the remaining undivided community property. Accordingly, the December 21, 2007 agreement, which is the only agreement containing the language regarding spousal support (the September 3, 2010 agreement contains no provision regarding spousal support), was not an "integrated" agreement, and the Court retains jurisdiction to modify the amount of the award of spousal support set forth therein.

Guam law allows for spousal maintenance in the form of alimony, 19 GCA §§ 8401 and 8402. Section 8402 states that alimony shall be awarded "to enable the wife . . . to support herself and her children . . . or prosecute or defend the action." 19 GCA § 8401 (2013). The Defendant testified that she has been unable to procure employment at a wage which would enable her to support herself and her children, and that they can barely afford to live in a two-bedroom apartment, which is not large enough for the four of them. Further, the Court is aware that the Plaintiff was able to negotiate the September 3, 2010, agreement such that he was able to obtain title and possession of at least ten vehicles worth $49,400.00 in exchange for the sum

of $10,000.00. More importantly, the Plaintiff was able to have the Defendant disclaim her interest in community benefits worth $942.17 per month, or $11,306.04, per year, for the rest of the Plaintiff's life, in exchange for this same sum of $10,000.00. Finally, during the marriage, the Plaintiff was able to obtain the withdrawal and use of the Defendant's 401(k) plan, the entirety of which was used to purchase the house at 110 Chalan Tasi, Pago Bay, Guam, from which the Plaintiff currently receives $3,000.00 per month in rental income. The Defendant receives nothing from this investment, and now has little retirement savings remaining to her for her support in her later years. The Court finds that this division of assets is inequitable, and fails to provide the Defendant with sufficient assets or income to support herself and the children of the marriage.

In accordance with this inequitable division of assets, and the loss of Defendant's primary retirement account and possible future income therefrom, the Court finds that modification of alimony is necessary to place the Defendant in a similar position to that held before or during her marriage. Accordingly, the Court awards $3,000.00 per month to the Defendant as spousal support. As the Defendant currently receives $12,266.00 per month in income and compensation, this award results in approximately 37% of the Plaintiff's current income and compensation being utilized to support his former wife and the three children of the marriage, while the Defendant retains approximately 63% of his income and compensation for himself. The Defendant and the parties' three minor children (i.e., four people) will be supported by the receipt of $4.582.00 per month in total support from the Plaintiff, while the Plaintiff will retain $7,684.00 per month of his income and compensation. The Court finds that this division is equitable in light of all the circumstances presented in this case.

IV.)  Defendant's Retirement Benefits

Defendant has now provided the Court with a declaration and written statements concerning her 401(k) IRA ("TSP IRA"). This TSP IRA was community property but it no longer exists, as it was used in its entirety to purchase the house at 110 Chalan Tasi, Pago Bay, Guam, which is also community property. However, Defendant's newly submitted evidence also establishes that she has another currently existing TSP IRA 2011 with a balance of $4318.04.

Plaintiff has never waived any possible community interest in the Defendant's retirement plans. However, the Court finds that the inequitable division of the parties' community assets through settlement agreement requires that the Court award this asset to the Defendant, in its entirety, as her sole and separate property.

## ORDER

IT IS HEREBY ORDERED that the Defendant shall maintain sole physical custody of the minor children of the parties, with both the Plaintiff and the Defendant sharing joint legal custody of the minor children. Plaintiff shall continue to pay a monthly amount of child support to the Defendant which is consistent with the applicable amount set forth under the Guam Child Support Guidelines, and which is currently set at $1,582.00 per month. Plaintiff shall continue to provide medical and dental insurance coverage for the minor children, until they reach the age of eighteen (18), or until they graduate from high school, or until the age of twenty-five (25), if enrolled full-time in a post-secondary educational institution, whichever is later. As alimony/spousal support, the Plaintiff shall pay the amount of $3,000.00 per month to the Defendant for the remainder of his lifetime, until his death, or until the Defendant's re-marriage, whichever occurs sooner. The amount of alimony/spousal support shall be non-modifiable by any subsequent agreement of the parties, either upward or downward, except that the Court

retains jurisdiction to modify the award in accordance with the requirements of Lujan, 2012 Guam 7. No arrearages for alimony/spousal support are awarded. No attorney's fees are awarded. Defendant shall retain her TSP IRA 2011 retirement account as her sole and separate property.

The Court ORDERS that the Plaintiff shall have as his sole and separate property all personal jewelry, clothing and effects in his possession, and all accounts which are not specifically addressed in this Findings of Fact and Conclusions of Law in his name.

The Defendant shall have as her sole and separate property all personal jewelry, clothing and effects in her possession, and all accounts which are not specifically addressed in this Findings of Fact and Conclusions of Law in her name.

In accordance with the Settlement Agreement for Separation, Division of Property, Child Custody and Support of December 21, 2007 and the Settlement Agreement of September 3, 2010, the Court ORDERS that the Plaintiff shall assume all community debts of the parties incurred prior to December 21, 2007, including the loan for the real property situated at 110 Chalan Tasi, Pago Bay, Guam, and the debt for a non-secured loan from Navy Federal Credit Union for the particular transaction referenced in the September 3, 2010 Settlement Agreement as his sole and separate debt. All other debts incurred by the parties shall be the separate debt of the party in whose name the debt is contracted. The 1987 Acura Legend is awarded to the Defendant as her sole and separate property. The remaining vehicles listed in the pleadings and the above findings are awarded to the Plaintiff as his sole and separate property. The Plaintiff's military retirement account is awarded to the Plaintiff as his sole and separate property. Finally, the Plaintiff shall not dispose of the house and lot at 110 Chalan Tasi, Pago Bay, Guam except through sale of the property for appropriate fair market value. "Upon the sale of the house, any

equity shall first be applied to pay off" the reasonable costs of the sale, the mortgage loan for the house and lot at 110 Chalan Tasi, Pago Bay, Guam, the parties' IRS debt, the Navy Fed Visa debt, and the USAA Master Card debt.  The proceeds shall next be used to reimburse the Plaintiff for any improvements made to sell the house and any remaining proceeds shall be distributed equally between the parties.  The parties shall submit their social security numbers to the Court, and shall submit the social security numbers of the parties' minor children under seal to the Court for vital statistics purposes, and so that the Court may enter the interlocutory and final decrees of divorce pursuant to 19 GCA § 8321.

**IT IS SO ORDERED** this ___FEB 2 7 2013_____ .

_____
HONORABLE ARTHUR R. BARCINAS
Judge, Superior Court of Guam

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam.
Dated at Hagåtña, Guam

FEB 2 7 2013

Cynthia T. Tiong
Deputy Clerk, Superior Court of Guam